Our next case is No. 23-2208, Fintiv, Inc. v. Apple, Inc. Before counsel argues, there's a real problem here with the confidentiality markings, which seem to be inconsistent, and it could be very difficult for us to ask the questions that we'd like to ask at oral argument unless there's some agreement that those confidentiality markings can be ignored by us. They seem not to be appropriate in the first place. Your Honor, we discussed our approach, if that's okay. Your Honor, counsel for Apple and I had a brief email exchange where they confirmed that Apple does not want us to reveal the names of the code that we redacted in the brief, and so I have, while difficult, ventured to construct my argument so that instead of naming the code, I refer to... Okay, but there are a lot of other confidentiality markings in there other than the names of the code. If we just treat all the other markings as removed and just keep the confidentiality of the code names, are we okay? Your Honor, anything else that's redacted in the briefing is fair game. All that's redacted from our brief are the source code file names, and that is what Apple wants to keep confidential. Okay, so if we keep the source code file names confidential, everything else is okay? I believe so, yes. Yes, Your Honor. Okay, thank you. Ms. Addy. Good morning, Your Honors. The District Court erred in granting summary judgment in the face of Fintech's ample evidence of widget software, both direct and circumstantial. This case should be reversed. The District Court construed the term widget to be its plain meaning of software that is either an application or works with an application, and which... What does the software do? We have to know what the software does. Just to say that there's software doesn't help us very much. Well, that's how the court construed widget. Our expert testified... Okay, but in applying the construction to the facts of the case, I think we have to understand what the source code does, what the applet does, what the app does. Otherwise, it's hard to make much sense out of this. So, Your Honor, our expert testified that the widget is software that allows the user to interact with the card, and I can direct you to our blue brief. It's software that allows you to access the confidential information in the secured environment? Sometimes. I mean, it depends on what the widget is programmed to do. And the widget may be programmed to do different things, but it allows you to access information. It allows the user to access information relevant to the card. From the SC? Yes. Can you maybe walk us through an example, just so I can make sure I understand? I mean, I think there's something to do with interactivity. At times, I think that's what Dr. Seamus or you are describing, but just some kind of concrete example I think would be helpful to paint a picture in my mind as to what is going on here that would be the types of functions that would meet the claim construction for widget. Okay, so there's a good example at pages 38 and 39 of our brief, where our expert did demonstrations on the Apple iPhone and its wallet application. And first, he shows that you pull up the wallet application, and it has various cards that you have provisioned. And then he shows that you select one card, you tap on it, and you tap on that card, and then information shows up about that card. And different credit cards may provide you with different information about their cards, depending on the company. But the widget software is the software that is executed when the user touches the phone at the place where the card art is. Okay, so the card art, in a way, acts as a user interface? Yes, it does. And then there's, in your view, software behind that display that is allowing the user to access information or perform actions. That's correct, Your Honor. That's correct, and our expert testified that... My understanding of your argument is that you don't have to show the actual code that corresponds to the software. You can show what the device does and show that that functionality requires the particular software, and that is sufficient to show infringement. Basically, that's the argument, right? That is the argument, but there's a little more to it. So first, the claims require software for acting on a widget, and our expert was focused on that software, and through his over 300 paragraphs of expert report, he identifies the source code that specifically acts on the widget. But he also identified the widget itself, and he identified the widget itself, as you said, through... Through functionality.  He supplies various screenshots. Yes. And the question is whether those screenshots show the functionality that's covered by the claims, right? But he explains... Yes, right? Yes, Your Honor, and he explains that functionality in his deposition. But the problem I'm having is I understand Apple's argument, looking particularly at page 15 of the red brief. What they're saying is that that's not, quote, sensitive information, that that may be information that's in the wallet, but it's not sensitive information, and that the functionality has to have the ability to disclose, to display sensitive information. Well, Your Honor, obviously we disagree with that, but... I understand. But that's a... That's their argument. I understand. That is a factual dispute. No, wait, but that's... I'm just trying to understand what the differences are between...  That is their argument. That is their argument. Right. And I know you disagree with it, but that's the argument, right? Yes. I think that's one of their arguments, but I'll... Yes. Okay. That argument, it goes beyond what the claim construction is for widgets. Yes, it does. Okay. Thank you. That is also a disputed issue of fact as well, and I... Do you think you've presented evidence from which a reasonable fact finder could find that confidential information is accessible? Absolutely, Your Honor, we have. And one way, one place to look for this is... Apple provided a technical document at... We have it at Blue Brief 38 to 39, which talks about provisioning... Provisioning its... What we would call as a widget. And if you look at that first bullet point in the technical document, the first bullet point says that it calls an API. And if you look at the claim construction of a widget, the widget works with an application. Later on in that bullet point, it says it retrieves server-defined UI for card information. And the widget definition says it may have a user interface. So that document in and of itself creates an issue of fact about the existence of widgets, but there's so much more evidence. In addition, Apple has a witness that describes the same underlying functionality, and that's at 19-378 of the record, where he's talking about the UI and execution and the API. This is about passes? Yes, that's correct, Your Honor. And I think there's a factual dispute here about whether passes can contain widget code. And we say that they do, and our expert, Dr. Shamos, testified that they do. Let me try to put a final point on it. Is it your view that the passes that the Apple witness referred to is the widget? We can't say that it is the widget, but we can say that it is part of the widget. And I believe that our expert testified that these passes are code that is essential to getting the widget on the machine. It's involved in the creation of the widget, and it's involved in viewing the widget. In fact, some of this code has a very important name in it that you can see in our briefs that would also indicate the existence of a widget. Right, but Shamos didn't rely on that particular source code file as corresponding to the claimed widget, right? He discussed it in his expert deposition. I mean, it was a very quick, casual, drive-by reference to that particular file. I think he found it later. But it's actually a part of a larger source code file that he was looking at. And so if this were before the district court, we would argue that it's not a new argument. This is something that was part of a larger file that he did discuss. In addition, Your Honor, that same file that we're referencing, that same file, Apple's expert, Dedrick, testified that it's used exclusively on iOS devices, notably the iPhone. And the district court disregarded that part of the testimony, relying on an earlier part of the testimony where he said it wasn't used on the Mac. So do you agree that the claim construction here is inadequate because all it says is a widget is software? It's got to be software that does some specific thing, right? Well, it does say that it is software, an application that works with software, that is an application, or that works with an application, and which may have a user interface. Okay, but it doesn't really go beyond saying it's a kind of software. It doesn't tell us what it does. I mean, if you were to prevail on appeal, and this goes before a jury, the jury would have to know what the software supposedly does, wouldn't it? The software does different things depending on which widget is being, which visit is being invoked. And there are different widgets on the Apple Wallet that are different cards that perform different functions. The question, but in order to, the claim is to a particular kind of software that does something, that extracts confidential information from the wallet and allows the user to see it, right? Yes. Wait, are you saying that widget is limited to the particular conception that Judge Dank just expressed? No, I'm sorry, Your Honor, I'm not. Okay, so you didn't mean to say yes when you said yes. I'm sorry. Okay, well, retract the yes and tell me what's the definition. What does the widget have to do to come within the claim? So, to come within the claim, it has to satisfy the claim construction, which neither party has appealed. That's just software. Yes. That's not enough. It has to be software that does something. So, Your Honor, I think it's important to look, the claims don't positively claim a widget. The claims are specific about what actions are performed on the widget, and specifically, the claims refer to What are the actions that are performed on the widget? Excuse me? What are the actions that are performed on the widget? Your Honor, the actions in Claim 11 are retrieving the widget and And then provisioning the widget. Correct. Provisioning the widget. Whatever the widget may be. Software. That's right. The specific software for performing a specific task that is interactive with the user. What's the specific task? It can be different tasks, Your Honor, but sometimes it's providing information. What's the universe of tasks? I mean, you're fighting something which seems to be self-evident. I'm sorry. You can't present this and understand whether there's an infringement of the claim unless you know what the software does. Your whole theory is that by looking at the function, you can tell that the widget software is there. And I understand that seems to be a legitimate theory of infringement. But you still have to know what it is that the actions are that are being performed by the widget. I'll give you a chance to answer if you want, but it seems to me that you were at a final pretrial conference. The parties were ready for trial, and both sides seem to have been content with the claim construction. Yes. And no one asked for any further construction. Yes. That's where we are in this case. That's where we are, and I believe that there's a footnote in the red brief saying that there's no claim construction dispute. And I think that's because widgets can be different things, but in this case, Your Honor, the widget provides interoperability between the user and the cardholder regarding information and action for his cards. Just one small point. As I understand it, there were other grounds for summary judgment that Apple had asserted in its motion, and the district court did not reach because they didn't want to miss one.  So if we were to remand, you would still have to confront those other grounds for summary judgment, correct? I believe they denied them, but if there are grounds that weren't reached, the parties would have to deal with that. If the district court says the court need not address the other three grounds. I think he, I know that there was an oral proceeding as well. So yes, Your Honor, you're correct. If there are unaddressed grounds, we would have to deal with those. Thank you. Okay. I think we're good. Do you want to save? Yes, I will save the remainder of my time. We'll give you two minutes, okay? Thank you. Two minutes. Ms. Bostwick. Thank you. May it please the court, there are a number of misstatements the counsel for FINT have made that I would like an opportunity to clear up. But to start, I want to sort of reset the basic discussion. This case is not actually about what the widget does, but what it is. If we look at the claim language, as Your Honors were doing a minute ago, the claims don't talk about widget software for interacting with a card. The claims do not, our position is not that there's some issue about whether they retrieve confidential data. That was part of a discussion in the background of our brief, explaining the many ways in which Apple's Accused system is different from what the patent contemplates. But the issue is not that the widget doesn't do the thing it's required to do. It's that it doesn't exist in the first place. There is no piece of software in Apple's Accused devices that meets the requirements of the widget. You may have to agree that you can prove the existence of software by proving that the functionality that the software performs is present in the device, right? If the claims in this case were about software to perform a particular functionality, then perhaps you could show it by showing that the functionality is in the device. That's not what these claims have. What these claims refer to is a particular structural arrangement of multiple different pieces of software. The widget is one of them. And the claims talk about the actions performed on those different pieces of software and the interrelations between them. And that's really important because it's part of why the actions performed on the widget in Claim 11 are retrieving the widget and then provisioning the widget. And then in Claim 18, this is about the server side of the system, it has a widget management component to store and manage widgets. And then Claim 23 is the device claim that refers to a mobile wallet application configured to store a widget. In each of the claims also, the widget must correspond to a contactless card applet, which is a separate piece of software, which is an additional part of the problem with the functionality argument that they're presenting. They're saying, and their expert was saying, look, I can pick up my iPhone, I can touch a card on the screen. The claims have nothing to do with that. The claims don't say that a widget can do that. In fact, as our expert pointed out, this is at A14062, Claim 11 talks about displaying a contactless card applet for the user before the widget is even retrieved. So before the widget even gets onto the device, you can display that card and make a selection. I'm getting lost as to what is the actual true focus of this appeal and the grounds for granting summary judgment. You're making a broader non-infringement argument right now, it sounds like. And what I just want to try to understand here is, for our purposes, this court's purposes, do we just have to answer the question whether or not there was a genuine dispute about whether the functionality that the plaintiff was pointing to in Apple's accused product is functionality performed by software or not software? Is that the only question we have in front of us? I would phrase it a little differently. It is a narrow question. The claims all require a widget, actions performed on a widget, or things configured to do something to a widget. Under the undisputed construction that the district court gave, which Fintive fought at the district court and has not challenged on appeal, the thing that is acted upon must be software. And so the question is, has Fintive actually identified, presented a genuine issue of fact that there is software in Apple's accused devices that could be the widget? And as the district court found— There is software in the device, that's right. There's plenty of software. That doesn't answer whether— That's why we have to know what the software does. No, Your Honor. You have to know what the software is. Let me give you an example. I think it's helpful to contrast their argument on the widget and their allegations on the widget with their allegations on a separate piece of software that is the wallet management application. If we look at Dr. Shamas' report, this is at Appendix 18768. This is right after he has these paragraphs on the widget, right? And he says, yes, there's a widget. He cites a whole bunch of source code files for the widget. At his deposition, he said that each of them was not the widget. He cites some non-source code files. He said at his deposition, those are not the widget. He doesn't have to cite source code files. He didn't have to cite— Or embedded software, right? Absolutely not, Your Honor, and I'm about to show you how. So the wallet management applet is the next limitation. It also has to be software. Starting at Appendix 18768 and going on to 18771, he identifies three specific things that he thinks might be the wallet management applet. He talks about an applet by name in Paragraph 312 that the court can see. He talks about in Paragraph 313, he talks about a domain that the court can see. And in Paragraph 314, he talks about another named applet. The first two of those, he doesn't cite source code files. He cites non-source code files. For the third, he cites a mix of source code and non-source code. We may have plenty of problems. We're going to dispute that this is infringement of the wallet management applet limitation. But what we didn't do is move for summary judgment for lack of evidence because what we can see in these paragraphs is what Fintip is accusing in the first place of being the wallet management applet. There is no comparable showing for the widget. Everything that Dr. Shamas pointed to in his report, he then said in his deposition— everything concrete that he pointed to, he said in his deposition, that's not the widget. All that he is left with is a screenshot. And he's saying, well, I can interact with it, and so there's some software behind it. Okay, but how do we know that the software that's sitting behind it is retrieved, provisioned, stored by the widget management component on the server? They haven't identified the software. And there's a reason why they aren't telling you what specific software is causing that interaction. Because if they pointed to it, they would not be able to meet the claim language. You can see there's a brief reference to this in Dr. Shamas's deposition to part of Apple's operating system code, part of the code that is preexisting on the device that is what allows that interaction. Now, they never argued to the district court that that part of the operating system code is the widget. They bring it up to this court, and it's in his deposition. It is not in the summary judgment record because if they had argued that, we would have had a very different non-infringement argument. That code is not retrieved, is not provisioned, is not stored on the server side. It doesn't meet all of the claim requirements of widgets. So the issue here... That sounds like a different question, though. It would be. Because right now, the only question is whatever they're saying is a widget, is it being performed by software or not? But they're... Oh, that's all right. It sounds like you would basically agree that inside of Apple's iPhones, whatever the clicking and interacting with the display, that is, in fact, being performed by software. Now, it might not be provisioned in the way it's claimed or retrieved or whatever the words of the claim are saying, but I don't think you're questioning the fact that underlying it all is, in fact, software that permits this kind of user interaction. Am I right? There's all kinds of software in Apple's devices. Some of it permits user interaction. That has nothing to do with the claim language, which does not... Okay, but it has everything to do with the grant of summary judgment. It absolutely does not, Your Honor. The grant of summary judgment was that Fintive couldn't say what the widget was. If you look at Appendix 10, this is what the district court was struggling with, and he says, Nowhere does Fintive's opposition state that the widget in the accused product is X, where X is an identifiable piece of software as required by the court's construction. They haven't given you an identifiable... We've taken these screenshots. We think that that shows that the widget performs a particular function that's covered by the claims. Therefore, there must be a widget in there. And you agree they don't have to show the source code, right? I agree they don't have to show the source code. I don't agree with the exact characterization of what they said, but regardless, saying it performs a function, again, that's not what these claims are about. These claims are about an arrangement of multiple pieces of software. How is that differentiating it from what they've pointed to as the contactless card applet, which is a separate claim limitation? So for the contactless card applet, this is Appendix 18748, and what Dr. Chalmers points to for that is the graphical representation of a payment applet for a particular card. If all I'm saying is I can look at my phone and see a picture of a card, how is that different? They're saying the picture of the card and the way a user interacts with us tells us, tells me, Dr. Seamus, that there is software underlying that, and that's the widget. What precludes a jury from having to assess that kind of evidentiary presentation? So first of all, Your Honor, he doesn't actually say that. Fintub's attorneys are saying that. They haven't shown where Dr. Chalmers said that, and they particularly haven't— Well, he clearly says there's a widget there, right? That is his opinion. You might say it's conclusory. Yes, Your Honor. But he says there's a widget there. Yes, Your Honor. And then he starts to point to all sorts of functionality. I mean, he does throughout his report. It's a long report. Well, he points to source code, right? He points to source code. And then at his deposition, we asked him, okay, is that the widget? Is that the widget? And he said, no, no, no. The only functionality— What requires him? What case would require that he specifically identify the piece of software that is the widget? What prevents them from making a broader circumstantial case to a jury that includes the expert saying only what he said in the report and includes evidence that came out of the mouths of Apple witnesses plus Apple documents? And you put on your expert, and the jury draws whatever reasonable inference it wants to draw. So as to the mouths of Apple's witnesses, this is some of the mischaracterizations that I referred to. First of all, as to passes, if they wanted to say— and the Incentives Council would not say that passes are the widget. They've never said that passes are the widget. So our engineer's characterization of them— It could be indicative of whether you have a widget. They haven't even said that, Your Honor. They did not say that to the district court. Likewise, the drive-by source code reference. Right, but let's assume, you know, during the hearing below and in the briefing to us, they are trying to make a connection between so-called passes that the Apple witness discussed and the widget. Not that the widget is only the passes, but the passes represent the kind of software that make up the broader widget limitation. So a couple answers, Your Honor. They haven't said that. They also—I would direct the court to Appendix 26298. This is Fintiffs' counsel at the summary judgment hearing to the district court. Quote, we're totally fine with relying on Dr. Shamus' report as to what he says is the widget. That is what he will present at trial. I think that, combined with the district court's earlier ruling that they would be limited to their report, means they're limited to their report. Beyond that, if they want to say that passes are the widget, again, they have to point to software. And all they've pointed to in connection with the passes are data, not software. They've pointed to the card image code—excuse me, yeah, they call it card image code. I would call it a card image file, regardless of the— What they're saying is you can't get that screenshot without the widget software. And widget software in Claim 11 is defined as corresponding to the contactless card applet, right? Yes, Your Honor. Which means that it's providing the same information that a contactless card applet has in the SE. I'm not sure that's exactly what we would say corresponding is, but I don't think it's a relevant distinction. The point is, it's not just that it has to correspond to the contactless card applet. It has to have been retrieved. Okay, what software is retrieved that is then the widget that gets to be provisioned? Which is it's retrieved because I took this picture of it. No, retrieval refers to retrieval from the servers. That's common ground between both parties. Okay, but I'm getting a little lost here in terms of what is actually the nature of the appeal. I didn't recall this appeal getting into whatever the widget is, has a case been made that it is being retrieved by Apple's products or that it's being provisioned by Apple's products. The only thing we need to worry about is whether there's a question, a plausible question, a reasonable question, that whatever the widget is, the functionality identified by the plaintiffs, that it is being done by software. Now, maybe they don't have direct proof of that. Maybe it's just circumstantial. Maybe it's just an expert just talking about how there's user interaction steps and therefore those steps necessarily are being done by software. And maybe that's rather meager and light evidence. But nevertheless, I think that's the only question we have to ask, right? I think it's even more basic than that. The question, again, as I started with, is what is the widget? Fintip has never actually said the widget must be software, and they haven't said what software in Apple's devices they are accusing as the widget. They simply haven't done it. So what more did they need to do? We all agree they didn't have to identify a particular source code file name. You're unhappy with them saying, look at how I use this device, and I see how I can call up all sorts of things, and in my experience, this is all being done by software. You're saying that's not enough. So what's the in-between that would be enough? Well, again, the characterization Your Honor just gave is beyond what their expert did. But even that, this is not a case about functionality. These claims are not about what a product can do. It's like the ultimate pointer case that we cited in our brief. But you're saying they didn't identify software. What is the actual example of what they needed to identify that they did not identify? Now that we all know that source code file names is not necessary. Yes, Your Honor. Again, I would point you to paragraphs 312 to 315 of Dr. Chalmers' report at appendix 18768 to 18771, where he identifies three different – two of them are software. We can dispute whether one of them is, but he at least said this is by name what I think it is. He cites documents about that particular feature, but he identifies it by name. Maybe a name is not necessary, but some description of a thing that one can – we have to be able to tell what the widget is. For example, for Claim 11, it requires retrieving a widget. It then requires provisioning the widget. So how can you tell if something is retrieved and then that same thing is provisioned without knowing what it is? How is Apple supposed to defend against an infringement allegation when we don't even know what they're accusing? Could you just quickly list some of the misrepresentations you think we heard today, if you haven't already gotten them out? Yes. As to the passes, Dr. Chalmers said as to all of the past source code files, he said it as deposition. Those were not the widget. The characterization of Apple's witness, Mr. Diedrich, he was not Apple's expert. He was Apple's fact witness. But regardless, he did not say the source code file that Dr. Chalmers happened upon at his deposition for the first time and pointed to. Our witness did not say that's in the IOS source code. What he said was Dr. Chalmers, when he came across that at his deposition, he was looking at a printout of the MAC source code and saw this file name in there. And what our witness said is this file has no purpose on the MAC, and I know that because if I look at the way it's named, that is a naming convention that is used only in IOS devices, and that was his basis for saying. I think just to the extent that counsel agreed with the characterization of our position as being about whether the widget retrieves confidential information, again, that's not our position. Thank you. Thank you, Your Honor. Ms. Addy, you've got two minutes. Ms. Addy, the retrieving a widget in the claim, is that retrieving a widget from the server? It couldn't be retrieving it from itself, right? Well, Dr. Chalmers testified that first the widget is provisioned, and when it's provisioned, it comes from the server. But after it's provisioned, it can come from the server or from the device, because when he turns on the IOS device, he can see that it's there. I'm just trying to understand, if we don't know what the software is and we're relying on this inference that there must be software somewhere, how do we know whether the limitations of retrieving and provisioning those so-called widgets is satisfied? We know that from all of the source code that Dr. Chalmers cited and explained in paragraphs 309 to 659 of his expert report. I heard a lot of factual, Your Honor, do you have a question? I heard a lot of factual dispute, and I just wanted to focus on two things, Your Honors. First of all, Dr. Chalmers was clear. First, the district court seemed to want this one widget file. Dr. Chalmers was clear that it's not like there's just a routine called widget.im. He said it's a combination of multiple pieces of software, some of which are preexisting, some of which are not, and those components actually call each other, and that's why it's so complicated. And secondly, we presented much more evidence than the screenshots, as I think you know. Those screenshots represented demonstrations. We presented Apple's own evidence that I highlighted in the opening, the file names that refer to specific important words, and the operability of the files. This is all about fact issues, and if you have no questions. Well, I do have one question. Yes. Claim 11 says retrieving a widget. Is that saying that the widget has to correspond to the contactless card Apple? Are you saying the widget has to correspond to the? Yeah. The widget corresponds to the card that it is being retrieved for, Your Honor. Well, that corresponds to the contactless card Apple. Okay. Yes? I'm not sure it's the contactless part personally, but it corresponds to the card. Let me tell you, I find this frustrating because you're saying we can show infringement by showing that the functionality of the widget is performed by taking screenshots and other evidence, and yet I'm still, after 45 minutes here, I'm still not clear what the widget does. The widget. So I can evaluate whether there's a genuine issue of material fact as to whether you presented evidence that it does what it's supposed to do. The widget corresponds to the contactless Apple. I was worried that you were invoking the near field communication. Okay. All right. Thank you. Thank you. You're welcome. Thank you, Your Honor.